44

John DeNAFO, Plaintiff,

v.

John W. GARDNER, Secretary of Health, Education and Welfare, Defendant.

Civ. No. 621–66.

United States District Court
D. New Jersey.
July 21, 1967.

Leonard H. Kaser, Williamstown, N. J., for plaintiff.

David M. Satz, Jr., U. S. Atty., by Donald G. Targan, Asst. U. S. Atty., for defendant.

## OPINION

On Motion for Summary Judgment

MADDEN, Chief Judge:

This is an action brought by plaintiff, John DeNafo, against John W. Gardner,

Secretary of Health, Education and Welfare. The plaintiff instituted suit to review and set aside a final decision of the Secretary denying the plaintiff's application for disability benefits under the provisions of the Act.[1]

The government filed answer, and along therewith, filed the complete record of the application, hearing and conclusions. The plaintiff and the government thereupon both moved for summary judgment on the record. Briefs have been filed and studied.

■ The Court's duty in cases of this nature is not whether it agrees or not with the hearing examiner but a more limited one, namely, "Was there substantial evidence in the record to support the finding of the examiner that DeNafo was not precluded by his physical condition from substantial gainful activity?" See Hodgson v. Celebrezze, 312 F.2d 260 (3 Cir. 1963).

■ This Court concludes that the Appeals Council of the Department of Health, Education and Welfare erred in holding that there was substantial evidence to support this determination.

The hearing upon which the Appeals Council based its decision was conducted by Albert C. Osofsky, Hearing Examiner, on July 14, 1965, and decision rendered October 15, 1965.

The personal history of the plaintiff is, as follows: he was born January 9, 1917; at age 8, as the result of a fall, he dislocated his right hip which ultimately caused a four-inch shortening of the right leg; he had an eighth grade education; he became a paperhanger and painter by trade; that on June 12, 1957, he suffered a myocardial infarction and was hospitalized, and was also found to be afflicted with arteriosclerotic coronary artery disease; by 1959 he had developed angina; that in May, 1964, he suffered his second myocardial infarction; and that by April 12, 1965, he suffered a severe coronary insufficiency.

In footnote 1, page 2, of the Decision of the Appeals Council, it states:

"The hearing examiner, based on the record before him, found the claimant last met the earnings requirements on June 30, 1958. A recertified earnings record (Exhibit AC-2) obtained by the Appeals Council shows that he continued to meet the earnings requirements through March 31, 1959."

In its conclusions the Appeals Council said:

"On September 30, 1964, the claimant filed an application, alleging that he became unable to work on June 12, 1957, because of a heart attack. His principal occupation was that of a painter. The medical evidence of record, before the hearing examiner, shows that the claimant sustained a myocardial infarction in June 1957 which required a 21-day period of hospitalization. Thereafter, he made an 'excellent recovery from his coronary' (Exhibit 22) and as late as March 1961 'was asymptomatic' (Exhibit 13). His attending physician 'told him that he could return to his paperhanging and painting provided he did not overdo it' (Exhibit 22). As of March 1961, he had a heart classification of 1-B (Exhibit 13)."

In concluding the Appeals Council said, in this paragraph, "Thereafter, he made an 'excellent recovery from his coronary' (Exhibit 22) and as late as March 1961 'was asymptomatic' (Exhibit 13)." The Appeals Council obviously ignored or missed parts of Exhibit 13, such as, "Present Condition—Did well from time of M.I. (myocardial infarction) to 1959 when angina developed but subsided in about 1 year."

Likewise, the Council did not observe the full text of Exhibit 23, wherein, among other things, it is observed "In spite of his having very little in the way of symptomatology, we had restricted his activities to very light work and no lifting or strenuous exertion. He was not able to obtain any employment during

1. 42 U.S.C.A. §§ 416(i), 423.

this time because of the restrictions of his exertional tolerance and, in spite of his doing very little by November of 1959, he started to develop mild angina with walking a block and a half."

The Council made no mention at all in its observations, and the record is replete, that the myocardial infarction of 1957 was caused by arteriosclerotic coronary artery disease. Even an uninformed layman, like a federal judge, konws that this is a serious and permanent condition that must restrict a person's physical exertion.

The Council then concluded "Although he experienced another heart attack in May 1964, this occurred after his insured status expired and, therefore, cannot be considered as a basis for entitlement to disability benefits under the Act."

■ While the Court agrees with the Council that the coronary in May 1964 cannot *standing alone* be the basis of disability benefits under the Act, it does nevertheless feel, and so holds, that such fact must be considered as corroborative or cumulative evidence of what the true condition of the claimant was as of March 31, 1959. It is well established that a medical prognosis is a calculated scientific guess as to the future, while a diagnosis is an opinion of what *has* transpired in the particular patient's body.

■ The law for this Circuit has been well established in the Hodgson v. Celebrezze, supra, matter where the Court said:

"[4] We conclude, therefore, first, that the Secretary has applied too strict a standard in this case. Not only must '[t]he capabilities of the individual * * * be viewed in context with his own physical, education and vocational background', Sobel v. Flemming, 178 F.Supp. 891, 895 (E.D.Pa. 1959), but also the following question must be asked and resolved: '[W]hat employment opportunities are there for a man who can do only what applicant can do? Mere theoretical ability to engage in substantial gainful ac-

tivity is not enough if no reasonable opportunity for this is available'. Kerner v. Flemming, 283 F.2d 916, 921 (2 Cir., 1960)."

The position of the Court is made doubly clear by the dissent of Judge Hastie, at page 264, wherein he took the position that the burden of proof was upon the claimant that because of his physical condition he could not obtain some gainful occupation. This was rejected by the majority where they said " * * * but also the following question must be asked and *resolved:* 'What employment opportunities are there for a man who can do only what applicant can do?'" (Emphasis supplied.)

This question has not been resolved by the Department in the slightest degree in this matter.

The action of the Appeals Council will be reversed and plaintiff's motion for summary judgment will be granted and the government's motion will be denied.

Counsel will prepare an appropriate order.